IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FERNANDO CAMPS,                                )
                                               )
        Plaintiff,                             )
                                               )       NO. 3:17-cv-1039
v.                                             )       JUDGE RICHARDSON
                                               )
GORE CAPITAL, LLC, KARL JAMES,                 )
ANGELA EVANS, and #AE20, LLC,                  )
                                               )
        Defendants.                            )

## MEMORANDUM OPINION

Pending before the Court is Defendant #AE20's Motion to Dismiss Second Amended

Complaint and Cross-Claim for lack of personal jurisdiction (Doc. No. 103), filed pursuant to Fed.

R. Civ. P. 12(b)(2). Defendant Evans filed a Response (Doc. No. 110), Plaintiff filed a Response

(Doc. No. 112), Defendant #AE20 filed a Reply (Doc. No. 117), and Plaintiff filed a Sur-Reply

(Doc. No. 137).

Also pending before the Court is Defendant #AE20's Motion to Dismiss First (sic)[1]

Amended Complaint and Cross-Claim for failure to state a claim (Doc. No. 105). Plaintiff filed

Responses (Doc. Nos. 111 and 141[2]), #AE20 filed Replies (Doc. Nos. 118 and 142), and Plaintiff

filed a Sur-Reply (Doc. No. 136).

---

[1] #AE20 undoubtedly meant "Second" Amended Complaint, since by this time, Plaintiff's First
Amended Complaint had been replaced by the Second Amended Complaint (Doc. No. 101), which
is in fact the target of #AE20's motion.

[2] Because the Response Plaintiff filed at Doc. No. 111-1 was actually his Response to #AE20's
other Motion to Dismiss, the Court ordered Plaintiff to file the correct Memorandum, which he did
at Doc. No. 141. Even though the Court did not order any further briefing, #AE20 filed a Reply to
Plaintiff's corrected Response (Doc. No. 142).

Also pending before the Court is Defendant Evans' Renewed Motion to Dismiss (Doc. No. 109), which is brought under Fed. R. Civ. P. 12(b)(7) and 19 for failure to join a required party. Evans relies on her previously-submitted Motion to Dismiss, Memorandum, Reply and "Sur-SurReply" (Doc. Nos. 84, 85, 91 and 97). Plaintiff filed a Response (Doc. No. 88) and a Sur-Reply (Doc. No. 94) to Evans' previously-submitted Motion to Dismiss and a Response (Doc. No. 114) in opposition to Evans' Renewed Motion to Dismiss.

## **BACKGROUND**

Plaintiff is a citizen of Buenos Aires, Argentina. His Second Amended Complaint (Doc. No. 101) ("SAC") alleges that Plaintiff was targeted by Defendants Evans, James, #AE20, LLC, and Gore Capital, LLC ("Gore") in a series of fraudulent investment schemes, as a result of which Plaintiff claims he lost $550,000. The SAC alleges that Defendant Evans is a resident of Tennessee, Defendant #AE20, LLC is a California limited liability company, and Defendant Gore Capital, LLC is a Delaware limited liability "corporation."[3] The SAC does not allege the state of Defendant James' residence. Plaintiff's original Complaint (Doc. No. 1) and First Amended Complaint (Doc. No. 20) ("FAC") list James' residence as Colorado. The Statement of Information filed with the State of California for #AE20 indicates that Defendant James is a resident of Colorado (Doc. No. 61-2), and Defendant Evans' Responses to Interrogatories indicate that James' address is in Colorado (Doc. No. 103-3 at Int. 2).

As both Defendants #AE20 and Evans point out, the allegations of Plaintiff's original Complaint (Doc. No. 1), FAC (Doc. No. 20), and SAC (Doc. No. 101) contain allegations that are inconsistent among one another. Plaintiff has also filed at least two Affidavits (Doc. Nos. 55-1 and

---

[3] Gore Capital is in fact a limited liability *company*.

112-2) that allege somewhat different accounts of what happened among these parties. For purposes of this background, the Court will rely upon Plaintiff's SAC, the operative Complaint at this time. Any relevant conflicts with prior pleadings and Affidavits will be noted where appropriate.

In the SAC, Plaintiff contends that he began a relationship with Defendant Evans in late 2013, soon after which Evans began to introduce Plaintiff to business investment opportunities with friends and business associates in the United States, including an investment opportunity related to professional car racing. Plaintiff asserts that, in March 2014, Evans took him to a professional car-racing event in St. Petersburg, Florida, where he met Defendant James and Erik Davis, the co-founder of #AE20. Plaintiff alleges that James was the managing member of Gore. Plaintiff contends that Evans, James and Davis invited Plaintiff to invest money in the racing-related businesses of #AE20 and/or Always Evolving.[4]

The SAC alleges that on April 12, 2014, Davis filed a Statement of Information with the State of California listing Davis and James as the two members of #AE20, LLC. Plaintiff contends that "it appears" that James' interest in #AE20 was transferred (or authorized to be transferred) to Gore on April 4, 2014. Plaintiff has not presented evidence that that transfer was ever made, however. Plaintiff asserts that, on April 23, 2014, Davis filed Articles of Incorporation for #AE20, but the document filed was actually Articles of *Organization* for #AE20, LLC. *See* Doc. No. 61-1. The Articles of Organization list Davis as the organizing member of the LLC. *Id.* Davis stated in his Declaration that, at all material times herein, he was a 50 percent member of #AE20 and James was the other 50 percent member (Doc. No. 61 at ¶ 2).

---

[4] The SAC refers to the racing business as #AE20/Always Evolving, although Plaintiff has not demonstrated that #AE20 and "Always Evolving" are the same entity.

The SAC asserts that "Defendants" instructed Plaintiff to wire-transfer money for investment in #AE20 to Evans' bank account in Tennessee, but paragraph 10 of Plaintiff's Affidavit, filed at Doc. No. 55-1, indicates that it was Defendant Evans who gave him that instruction. Defendant Evans has stated in discovery responses that she never transferred money to or from any accounts for #AE20 (Doc. No. 103-3 at Int. 8). Plaintiff avers that he wired $250,000 to Evans' account for the purpose of investing with #AE20, #AE20-related businesses and Gore. Plaintiff also alleges that in exchange for a promissory note from Gore in the amount of $200,000, he transferred $200,000 to Gore's bank account. Plaintiff alleges that he also twice transferred $50,000 (an additional $100,000 investment) to Gore, which Plaintiff represents is a 50 percent member of #AE20, although that fact has no support in the record.[5] Plaintiff claims that he sought, in vain, to obtain documents from Defendants about his investments before ultimately filing this action on July 15, 2017.

The SAC asserts breach of contract against Gore, fraud against all Defendants, fraud by wire transfer against all Defendants, intentional misrepresentation against all Defendants, and negligent misrepresentation against all Defendants. In her Answer to the First Amended Complaint, Defendant Evans alleged cross-claims against #AE20, James and Gore. #AE20 has moved to dismiss the claims and cross-claims against it for lack of personal jurisdiction and for failure to state a claim. Evans has moved to dismiss the claims against her for failure to join a necessary party, Defendant James. The Magistrate Judge allowed the parties to take limited discovery on the issues of personal jurisdiction and whether Defendant James is a necessary party to this action (Doc. No. 68).

---

[5] In fact, the SAC asserts that Davis was a 50 percent owner of #AE20 and (in paragraph 22) that *James* (not Gore) owned the other 50 percent interest in #AE20.

## CROSS-CLAIM

In response to #AE20's Motion to Dismiss, Defendant Evans points out that there is no longer a cross-claim by Evans against #AE20 in this action in its current posture. Evans' cross-claim was filed in response to the First Amended Complaint, which has been replaced with the Second Amended Complaint. Evans has not filed an Answer or Cross-Claim with regard to the Second Amended Complaint, in light of her pending Motion to Dismiss (Doc. No. 109) and represents that she has no cross-claims pending against #AE20 at this time.[6] Evans has stated that, if her Motion to Dismiss is denied, she will consider re-filing a cross-claim against #AE20 at that time. Therefore, #AE20's Motion to Dismiss the Cross-Claim will be denied as moot.

## #AE20'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)

### (A) Personal Jurisdiction

The party seeking to establish the existence of personal jurisdiction (here, Plaintiff) bears the burden to establish such jurisdiction. *Beydoun v. Wataniya Restaurants Holding,* 768 F.3d 499, 504 (6th Cir. 2014). In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings, but rather must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Kent v. Hennelly*, 328 F. Supp. 3d 791, 796 (E.D. Tenn. 2018), *appeal docketed,* No. 18-5821 (6th Cir. Aug. 7, 2018); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). In deciding whether to dismiss for lack of personal jurisdiction, [7] the

---

[6] The Court need not determine now whether, legally, Evans' Cross-Claim was extinguished by the SAC, because Evans has represented that she is not pursuing it at this time.

[7] Rule 12(g)(2) of the Federal Rules of Civil Procedure provides that a party that makes a motion under Rule 12 must not make another motion under Rule 12 raising a defense that was available to the party but omitted from its earlier motion. Rule 12(h)(1) provides that a party waives the defense of lack of personal jurisdiction by omitting it from a motion in the circumstances described in Rule 12(g)(2) or by failing to either make it by motion under Rule 12 or include it in a responsive pleading. Although there is no bright line rule for determining when a defendant has waived the

district court may rely upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017). Here, the Magistrate Judge permitted discovery in aid of deciding the motion.

When a district court rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the nonmoving party. *Ficarelli v. Champion Petfoods USA, Inc.*, No. 3:18-cv-00361, 2018 WL 6832075, at * 4 (M.D. Tenn. Dec. 28, 2018); *Beydoun*, 768 F.3d at 504. To defeat such a motion absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction. *Id.*[8] In this procedural posture, the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

---

lack of personal jurisdiction defense, the court should consider all of the relevant circumstances. *Varilease Fin., Inc. v. Earthcolor, Inc.*, Case No. 18-CV-11390, 2019 WL 1262792, at * 4 (E.D. Mich. Mar. 19, 2019). In this case, proper service upon Defendant #AE20 was not made until May 3, 2018. In its first pleading, #AE20 moved to dismiss the claims against it for lack of personal jurisdiction and, alternatively, for failure to state a claim (Doc. No. 57). That motion was withdrawn (Doc. Nos. 69-70) in light of the proposed Second Amended Complaint. The SAC was filed on September 24, 2018, and #AE20 re-filed its motion to dismiss for lack of personal jurisdiction on October 2, 2018 (Doc. No. 103). #AE20 filed a companion motion to dismiss for failure to state a claim (Doc. No. 105). Rule 12(g) allows a party to make multiple Rule 12 defenses at the same time. *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D. D.C. 2004). #AE20 raised the defense of lack of personal jurisdiction in its initial motion to dismiss. No party has raised an issue of waiver but, in any event, the Court finds that, under all the circumstances of this litigation, #AE20 has *not* waived the defense of lack of personal jurisdiction.

[8] If the court chooses to have an evidentiary hearing to decide a Rule 12(b)(2) motion, then the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Ficarelli*, 2018 WL 6832075, at * 4 (citing *Kelley v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 509 (M.D. Tenn. 2005)).

In *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012), the court declined to decide what standard to use when the parties are allowed discovery in aid of the jurisdictional issue but there is no evidentiary hearing, since the plaintiff had demonstrated personal jurisdiction even under the more-exacting "preponderance of the evidence" standard anyway. *Id*. at 699.[9] The court did suggest, however, that to the extent that the preponderance-of-the-evidence standard *could* apply in the absence of an evidentiary hearing, it *should* apply only in those "rare instances" in which a plaintiff has been granted all discovery requested and that discovery results in an undisputed set of facts such that an evidentiary hearing would be pointless. *Id*. Finally, the court in *Schneider* noted that some courts have held that the preponderance-of-the-evidence standard *never* applies in the absence of an evidentiary hearing. *Id*. at 698, n. 6. In *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 476-78 (6th Cir. 2003), the court applied the *prima facie* standard where there was limited discovery but no evidentiary hearing. *See also Schneider*, 669 F.3d at 698, n.7.

Here, as noted, the Magistrate Judge allowed limited discovery on the issue of personal jurisdiction. Plaintiff claims that he has not received all the discovery he requested and that there are real disputes about the facts relating to jurisdiction. #AE20 contends that it has provided full and complete responses to all discovery related to jurisdictional issues. There is no indication that Plaintiff filed a motion to compel the requested discovery, and Plaintiff did not request additional time to respond to #AE20's Motion to Dismiss to obtain additional discovery. Instead, Plaintiff responded to the motion but added an alternative request that, if the Court believes additional discovery is needed, Plaintiff be allowed to file a motion to compel documents. Plaintiff, however,

---

[9] The court cited *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998), which held that the district court erred in applying the preponderance-of-the-evidence standard where there was no evidentiary hearing on the jurisdictional question. *Schneider*, 669 F.3d at 698.

not the Court, has the burden of proof and the obligation to figure out whether he can meet it. Plaintiff decided to attempt to carry that burden on the record as it now stands. Plaintiff is disputing discovery responses in his Response to Defendant's Motion to Dismiss, which is inappropriate. Discovery issues are to be determined upon proper motion to the Magistrate Judge, under her case management rulings, the Local Rules of this Court, and the Federal Rules of Civil Procedure.

Because there has been no evidentiary hearing (and, for that matter, no request for an evidentiary hearing) with regard to this motion, the Court, in accordance with *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472 (6th Cir. 2003), will determine whether Plaintiff has demonstrated personal jurisdiction over #AE20 under a *prima facie* standard.

In a diversity case such as this one, a plaintiff must satisfy the state-law requirements for personal jurisdiction. *Ficarelli*, 2018 WL 6832075, at * 2. There is a two-step test to determine whether the Court properly has personal jurisdiction over #AE20. First, the Court must determine whether Tennessee's law authorizes jurisdiction; second, the Court must determine whether that authorization comports with due process. *Id.* For Tennessee federal courts sitting in diversity, it is unnecessary to analyze jurisdiction under Tennessee's long-arm statute separately from analyzing jurisdiction under the Due Process Clause, however, because Tennessee's long-arm statute has been interpreted to be "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause." *Id.* at * 3. In other words, the jurisdictional limits of Tennessee law and federal constitutional due process are identical, and the two inquiries are merged. *Id.*; *Up-Rite Systems, Inc. v. Allender*, No. 3-15-cv-710, 2016 WL 4702801, at * 2 (M.D. Tenn. Sept. 8, 2016) (citing *Bridgeport*, 327 F.3d at 477).

In order for a non-resident defendant to be subject to the personal jurisdiction of a court, the defendant must have certain "minimum contacts" with the forum state, such that maintenance

of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Kent*, 328 F. Supp. 3d at 797 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction comes in two forms: general and specific. Here, Plaintiff asserts that the Court has specific jurisdiction over #AE20. Specific jurisdiction must arise out of or be related to a defendant's contacts with the forum state. *Ficarelli*, 2018 WL 6832075, at * 3. In other words, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. *Up-Rite*, 2016 WL 4702801, at * 4 (citing *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a court to exercise specific jurisdiction that is consistent with constitutional due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Kent*, 328 F. Supp. 3d at 797.

For specific jurisdiction to exist: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make exercise of personal jurisdiction over the defendant reasonable. *Ficarelli*, 2018 WL 6832075 at * 3; *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The purposeful availment requirement is considered the most important. *Kent*, 328 F. Supp. 3d at 798. Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct that can properly be regarded as a prime generating cause of effects resulting in the forum state—something more than a passive availment of the forum state's opportunities. *Bridgeport*, 327 F.3d at 478. The defendant must have purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. *Kent,* 328 F. Supp. 3d at 798. Requiring that a defendant take purposeful steps in the forum

state ensures that a defendant's random, fortuitous, or attenuated contacts with the forum state will not subject it to being haled into court there. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Additionally, the defendant's relationship with the forum state must arise out of the contacts that the *defendant itself* created with the forum state. *Id.* (emphasis in original). The unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over the defendant. *Id.*

(B)  Analysis

As indicated, Plaintiff has the burden of proving that this Court has personal jurisdiction over #AE20. Plaintiff must come forward with specific facts to demonstrate that #AE20 purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee. Plaintiff must also show that his causes of action arise from #AE20's activities in Tennessee and that #AE20's acts or consequences have a substantial enough connection with Tennessee to make this Court's exercise of personal jurisdiction over #AE20 reasonable.

Plaintiff contends that #AE20 purposefully availed itself of the specific jurisdiction of Tennessee because "Tennessee-based members" of Gore (James and Evans)[10] and "Tennessee-based members" of AE20 (Gore and James) defrauded him and made misrepresentations on behalf of #AE20 in Tennessee. Plaintiff has not pointed to any specific misrepresentations actually made to him by or on behalf of #AE20 in the State of Tennessee. And, as explained above, Plaintiff has not carried his burden, even under a *prima facie* standard, to show that James was a resident of

---

[10] The Limited Liability Agreement of Gore Capital, LLC, filed by Plaintiff, does not list Evans as a member (Doc. No. 112-4, p. 29), but a later document does list Evans as a member of Gore (Doc. No. 114-10).

Tennessee or that Gore was a member of #AE20 at the time this lawsuit was filed.[11] He has failed to show that any interest in #AE20 was ever transferred to Gore.

Plaintiff asserts that he did not meet #AE20 or Davis "randomly, fortuitously or through attenuated contacts or the unilateral activity of a third person." But that argument fails to address the proper question: whether #AE20's contacts *with Tennessee* were random, fortuitous or attenuated or through the unilateral activity of a third person.

Plaintiff also argues that, based on Defendants' solicitations, he transferred money to Evans' Tennessee bank account for the purpose of investing in Gore and/or #AE20. Plaintiff has made conflicting allegations as to who instructed him to transfer money to Evans' account, but he has not carried his burden to show that #AE20 had a bank account in Tennessee or that Evans was authorized to receive money on behalf of #AE20 in Tennessee or that any money from Evans' bank account was transferred to #AE20.[12] Plaintiff argues that #AE20 purposefully availed itself by utilizing Tennessee banks, but he has not demonstrated in any way that *#AE20* (as opposed to Evans) used a Tennessee bank. As explained above, the unilateral activity of Plaintiff or a third-party (Evans) cannot be the basis for exercising personal jurisdiction over #AE20.

---

[11] Plaintiff states that he was sent documents that listed Gore's (not #AE20's) principal place of business as being in Chattanooga, Tennessee, although the SAC lists Gore as a "Delaware limited liability corporation (sic)," and the Schedule K-1 of Gore, filed by Plaintiff, lists Gore's address as Vail, CO (Doc. No. 114-4); *see also* Doc. No. 103-3 at 4, ¶ 2 (Evans lists Gore's address as in Colorado). Plaintiff describes Gore, James and Evans as Tennessee residents, although, as indicated above, only Evans' Tennessee residence is clear.

[12] Curiously, #AE20 cites *LAX, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293 (6th Cir. 1989) to argue that the locus of a monetary *injury* is immaterial for purposes of evaluating personal jurisdiction, but Plaintiff's transfer of money to a Tennessee bank account would not mean that he suffered an *injury* in Tennessee. In *LAX*, the plaintiff was domiciled in the forum state and the claimed injury to its purse was likely suffered there. Plaintiff's "purse" here was in Argentina.

Plaintiff asserts that Always Evolving and #AE20 participated in racing events in partnership with Nissan in Tennessee in 2015, but the press release he cites for this assertion involves only Always Evolving, not #AE20. Doc. No. 112-2. The SAC alleges that Plaintiff met with Evans in Argentina and met with Davis, James, and others in St. Petersburg, Florida. Plaintiff alleges that *he* (not #AE20) made a trip to Nashville in connection with his investments. Plaintiff contends that he made numerous requests, from Argentina, for Defendants to send him documents and information and that Evans (not #AE20) sent him various emails and documents (Doc. No. 101). Plaintiff's allegations concerning whether #AE20 was forced to cease operations have no bearing upon whether #AE20 established minimum contacts with Tennessee from which this action arose. Moreover, asserting that "AE20-related businesses" operate in Tennessee does not establish that *#AE20* purposefully availed itself of the privilege of acting or causing a consequence in Tennessee from which this action arose. Plaintiff has not alleged (let alone made a *prima facie* showing) that #AE20 had real or personal property or an operating business in Tennessee from which this action arose. He has not alleged that #AE20 leased or maintained offices or conducted any business meetings in Tennessee related to the subject of this lawsuit. He has not alleged or made a *prima* facie showing that #AE20 caused a consequence in Tennessee from which this action arose; any injury to Plaintiff was in Argentina.

The Court finds that Plaintiff has failed to carry his burden of demonstrating that the Court has personal jurisdiction over Defendant #AE20. Accordingly, #AE20's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will be granted, and, therefore, #AE20's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be denied as moot.

## EVANS' RENEWED MOTION TO DISMISS

(A) Plaintiff's Allegations

Plaintiff has filed three Complaints in this action – the original Complaint (Doc. No. 1), the First Amended Complaint (Doc. No. 20), and the Second Amended Complaint (Doc. No. 101). Plaintiff has also filed at least two Affidavits (Doc. Nos. 55-1 and 112-2). Evans contends that Plaintiff's account of what happened among the parties to this action keeps shifting. She maintains that Plaintiff is not discovering new facts, but rather is attempting to change his allegations to shift blame to the Defendants other than James, whom Plaintiff has been unable to serve. Evans claims that James was a central figure in Plaintiff's decisions to invest and is a necessary party to this action. She argues that, without James, the case should be dismissed.

In the original Complaint, Plaintiff alleged that "Defendants asked Plaintiff to loan money to Defendants for several business ventures." Doc. No. 1, ¶ 7. He does not mention a trip to Tampa or St. Petersburg or anything about a professional car-racing event or professional car-racing company. He defines the "Projects" for which Defendants asked him to invest money as including Defendant Gore Capital, Defendant AE20, and an alleged real estate project in Miami, Florida. *Id.* The original Complaint asserts that Plaintiff made the following investments "in support of the purported Projects": (1) $250,000 by wire transfer to Evans on July 15, 2014; (2) $200,000 by wire transfer to Gore and James[13] on September 18, 2014; (3) $50,000 by wire transfer, at James' request, to Gore and James on October 8, 2014; and (4) $50,000 by wire transfer, at James' request, to Gore and James on October 24, 2014.  Doc. No. 1, ¶¶ 10-14.

In the FAC, Plaintiff alleges that, at a professional car-racing event in Florida in 2014, Evans introduced him to James. He contends that Evans and James promoted certain business

---

[13]  Plaintiff alleges this transfer was in exchange for a Promissory Note from Gore for $200,000.

opportunities, particularly through Gore and #AE20. Doc. No. 20, ¶ 8. Plaintiff's investments are described as (1) a wire transfer of $250,000 to Evans' account on July 15, 2014, for investment with Gore, AE20 and/or James; (2) wire transfer of $200,000 to Gore on September 17, 2014, for the Miami real estate project and in exchange for a Promissory Note from Gore; (3) wire transfer of $50,000 on October 8, 2014, at the request of Evans, to Gore and James in support of the purported Projects; and (4) wire transfer, at James' request, of $50,000 on October 23, 2014, to Gore and James. Doc. No. 20, ¶¶ 10-16.

Plaintiff's first Affidavit asserts that Evans took Plaintiff to professional car races in Tampa and St. Petersburg, Florida, to meet Defendant James. Doc. No. 55-1 at ¶ 4. In that Affidavit, Plaintiff describes his various investments as follows: (1) wire transfer on July 15, 2014, of $250,000 to Evans' bank account to invest in Gore and/or #AE20; (2) wire transfer, on September 18, 2014, of $200,000 directly to Gore, in exchange for a promissory note from Gore, for investment in Riverside, a real estate project in Miami; (3) wire transfer, at Evans' instruction, on October 8, 2014, of $50,000 directly to Gore for the investment in Riverside; and (4) wire transfer of $50,000, at James' request, on October 23, 2014, to Gore for completing Riverside. Doc. No. 55-1, ¶¶ 10-16.

In the SAC, Plaintiff alleges that in 2014, Evans took Plaintiff to the racing event in Florida "for the sole and express purpose" of introducing him to Evans' friends and business associates seeking investment money from Plaintiff for professional car-racing businesses (but not for Gore or for real estate in Florida, as far as Plaintiff alleges). Doc. No. 101, ¶ 2; *see also* Plaintiff's second Affidavit (Doc. No. 112-2) at ¶ 2. He alleges, for the first time, that at this Florida meeting, he met Erik Davis, co-founder of car-racing enterprises Always Evolving and #AE20. He contends that he met with Defendants to discuss investment opportunities related to #AE20 and/or Always

Evolving (but not related to Gore or a Miami real estate deal, as far as Plaintiff alleges). The SAC asserts that, at that time in Florida, Defendants invited him to invest money in #AE20 and/or the #AE20-related businesses (but not in Gore or in Miami real estate, as far as Plaintiff alleges). Doc. No. 101, ¶¶ 2-8. In this iteration of Plaintiff's allegations, he describes his investments as follows: (1) wire transfer of $250,000 to Evans in July of 2014 "[i]n order to invest in #AE20" and "for the express purpose of investing with #AE20, #AE20-related businesses and Gore;" (2) wire transfer in August or September of 2014 of $200,000 to Gore, in exchange for a Promissory Note, for a real estate project in Miami; (3) wire transfer, at James' request, on October 8, 2014, of $50,000 to Gore; and (4) wire transfer of $50,000 to Gore, at the request of James, on October 23, 2014. Doc. No. 101, ¶¶ 13-19. Thus, in the SAC, James' role certainly has now been diminished, if not eliminated.

(B) Failure to Join Necessary[14] Party

Evans seeks to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 for Plaintiff's failure to join a required party to this action. Specifically, Evans contends that Plaintiff's failure to serve Defendant James with process precludes this action from proceeding.

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to join a party under Rule 19. In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings. *Harville v. Harville*, No. 3:12-cv-00807, 2013 WL 1245729, at * 5 (M.D. Tenn. March 27, 2013). Rule 19 provides criteria for determining whether an un-joined party is sufficiently related to or has a

---

[14] Rule 19 uses the term "required" party, but the cases also use the terms "necessary" and "indispensable." For purposes of this Memorandum Opinion and accompanying Order, there is no substantive difference among "required," "necessary," and "indispensable" in the Court's analysis. *See Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 604, n. 1 (E.D. Ky. 2019).

sufficiently substantial interest in the litigation so that a court should not proceed in the party's absence to a decision on the merits. *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp. 623, 626 (M.D. Tenn. 1988).

Rule 19 of the Federal Rules of Civil Procedure provides a three-step analysis to determine whether a party must be joined in an action. *Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 604 (E.D. Ky. 2019). First, the court must determine whether a party who is not joined is a necessary party who should be joined, if possible, based on the requirements outlined in Rule 19(a). *Id*. For a party to be deemed necessary or required, that party must meet at least one of the requirements included in Rule 19(a)(1): (A) in that party's absence, the court cannot accord complete relief among the existing parties; or (B) that party claims an interest relating to the subject of the action and is so situated that disposing of the action in that party's absence may: (i) as a practical matter impair or impede that party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1); *Spence v. Dexcom,* No. 3:18-cv-0369, 2019 WL 302504, at * 5 (M.D. Tenn. Jan. 23, 2019). If the answer to the Rule 19(a)(1) question is "no," then that is the end of the analysis.

If, however, the court finds that the party is necessary or required pursuant to Rule 19(a)(1), then the court must determine whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject-matter jurisdiction. If the party cannot feasibly be joined, the court must determine whether, in equity and good conscience, the action should proceed among

the existing parties or should be dismissed. *Id.* at 604. Rule 19(b) provides four factors to be considered at this third step of the analysis. *Id.*[15]

The initial burden to show that a missing party is indispensable is on the moving party. *Id.* at 606. Rule 19 is not to be applied rigidly, but it is meant to guide the court in considering such factors as the movant's interest in wishing to avoid multiple litigation or inconsistent obligations, the parties' interest in complete and effective adjudication, absentees' interests in protecting rights which may be affected by the judgment, and the public interest in judicial economy. *Harvill v. Harvill*, No. 3:12-cv-00807, 2013 WL 1245729, at * 3 (M.D. Tenn. Mar. 27, 2013). The decision whether to dismiss an action for failure to join a party must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968), *cited in Santiago v. Honeywell Int'l, Inc.*, No. 18-12006, 2019 WL 1579837, at * 4 (11th Cir. Apr. 12, 2019).

(C) Alleged Contradictions

Evans asserts that the Court should disregard Plaintiff's contradictory allegations for the same reason that courts may disregard "sham affidavits." Under the "sham affidavit" doctrine, after a motion for summary judgment has been filed, a party may not file an affidavit that

---

[15] The four factors for the court to consider in determining whether to allow the action to proceed among the existing parties are: (1) the extent to which a judgment rendered in the person' absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment, (B) shaping the relief, or (C) other measures; (3) whether a judgment rendered in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

contradicts his earlier sworn testimony. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016).[16] If the affidavit directly contradicts prior sworn testimony, it should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. *Id.* If the affidavit does not directly contradict prior sworn testimony, it still should be stricken if it is an attempt to create a sham issue. *Id.*

Evans claims that Plaintiff's many different accounts of the underlying facts of this case are like "sham affidavits" and, under the same rationale, should be disregarded. Plaintiff argues that his amended pleadings and affidavits reflect "startling new and blatantly contradictory facts" provided by Evans and #AE20 after this litigation began. These purportedly contradictory facts are, according to Evans, not "new."[17] Evans is correct, in the sense that these amended allegations do not relate to "new" events; they relate to Plaintiff's meetings with Defendants and the investments that resulted, all events and actions that arose before the original Complaint was filed and for which Plaintiff was present. In other words, these circumstances did not change after the litigation was filed.[18] Primarily, Evans contends that, as time has passed, Plaintiff has (rather than

---

[16] Affidavits by their very nature tend to be self-serving. Indeed, it would be odd for a party to submit an affidavit that was not self-serving in the sense that it provides support for that party's claim. *Lannello v. American Gen. Life Ins. Co.,* 298 F. Supp. 3d 1133, 1138 (M.D. Tenn. 2018). Regardless, affidavits can be considered unless they directly contradict prior sworn testimony or are injected into the proceedings merely to avoid summary judgment. *Id.* In *France*, the affidavit in question was the third different version of the witness' story. *France*, 836 F.3d at 622.

[17] For example, the alleged fact that Plaintiff met Erik Davis and discussed investment in #AE20 at a professional car-racing event is not a new fact that arose between the filing of the original complaint and the filing of the SAC. That meeting occurred before the original complaint was filed.

[18] Plaintiff argues that his allegations regarding the monetary amounts of his investments did not change (Doc. No. 114-1 at 6), but Evans is not alleging that the monetary amounts are contradictory. Evans asserts that the particulars have changed about who did what and for what investments Plaintiff wired money to Defendants.

learning "new" facts) merely changed his allegations based on "old" facts about the conduct of James *vis-à-vis* the other Defendants.[19]

Plaintiff alleges that he learned two "very revealing facts" from the Davis Declaration filed by #AE20 in support of its first Motion to Dismiss: (1) that Davis decided to stop operating #AE20 and sell #AE20's assets on or about July 15, 2015, and (2) that Davis allowed the State of California to suspend #AE20 on December 7, 2017 (Doc. No. 114-1 at 12).[20] Neither of these "very revealing facts" has anything to do with the Rule 19 analysis.

Nonetheless, Plaintiff is the master of his Complaint, and the SAC is currently the operative complaint in this case. The Court declines to disregard Plaintiff's pleadings and Affidavits under the rationale of "sham affidavits," but it will consider Plaintiff's inconsistencies (and Evans' assertions about those inconsistencies) in determining whether James is a required party without whom this action cannot proceed.

(D)  Analysis

Plaintiff argues that James is an alleged joint tortfeasor and that joinder of a joint tortfeasor is not required under Rule 19. It is not necessary (or "required") for all joint tortfeasors to be defendants in a single lawsuit. *Temple v. Syntyes Corp., Ltd.*, 498 U.S. 5, 7 (1990); *Wilson v. Gordon*, 822 F. 3d 934, 957 (6th Cir. 2016) ("the Supreme Court has held that joint tortfeasors are not required parties under Rule 19(a)"). As the Advisory Committee Notes to Rule 19(a) state, a

---

[19] In response to Evans' Rule 19 Motion, Plaintiff takes issue with certain of Evans' allegations, claiming they are contradictory, but issues with Evans' allegations are not material in resolving Evans' motion.

[20] Plaintiff's citations for these assertions are incorrect (Doc. No. 114-1 at 12). Davis' Declaration is Doc. No. 61 (not 61-1), and, contrary to Plaintiff's citation, there are no paragraphs 27 or 28 in that Declaration. Doc. No. 61-1 is the Articles of Organization for #AE20, and, contrary to Plaintiff's citation, there is no paragraph 8 in that document. Many of the citations on page 13 are also incorrect.

tortfeasor with the usual "joint-and-several" liability is merely a *permissive* party to an action against another with like liability. *Id*. Because of joint-and-several liability, joint tortfeasors and co-conspirators are not indispensable parties under the Federal Rules of Civil Procedure. *Law v. American Capital Strategies, Ltd.*, Civil No. 3:05-0836, 2007 WL 221671, at * 18 (M.D. Tenn. Jan. 26, 2007). The Court finds that James is not a required party to this action simply because he is a joint tortfeasor.[21] As a potential tortfeasor with the other Defendants, James is merely a permissive party. *Temple*, 496 U.S. at 8.

To the extent Evans argues that James is a required party pursuant to the first of the Rule 19(a) factors, the Court rejects that argument because it finds that it can afford complete relief among the existing parties. The "complete relief" requirement of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible. *Yates v. Applied Performance Tech., Inc.*, 209 F.R.D. 143, 149 (S.D. Ohio 2002) (citing *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984)). The "complete relief" requirement concerns the ability of the already-included defendants to fully satisfy any judgment awarded to the plaintiff. *Bedel*, 103 F.R.D. at 80. Evans argues that Plaintiff could recover against her in this action while she is effectively deprived of recovering from James, a result she characterizes as "unconscionable," but the possibility of subsequent relief via contribution or indemnification is not a concern when determining whether complete relief can be given. *Yates*, 209 F.R.D. at 149. Much as a joint tortfeasor might wish that joint tortfeasors *share* the liability, the nature of joint-tortfeasor liability is that each tortfeasor is on the hook for *everything*. Moreover, Evans has conceded that she no longer has a cross-claim against James or

---

[21] Curiously, Plaintiff argues that James is adequately represented in this action by Gore, but Gore is not represented at all and has made no appearance herein.

any of the other Defendants. If Plaintiff recovers damages from Evans and Evans believes James is responsible to contribute to or to bear liability for any or all of those damages, Evans could file an action to attempt to recover those amounts from James.

Evans argues that *Reyna Capital Corp. v. Millennium Leasing and Fin. Servs., Inc.*, 494 F. Supp. 2d 1127 (S.D. Ohio 2006), supports her argument through what it does *not* say. In *Reyna*, the court found that it could afford complete relief to the existing parties without the joinder of certain absent parties because the plaintiff had not asserted claims against those absent parties. Evans argues that, here, because Plaintiff *did* assert claims against James, he is a required party. But *Reyna* indicates no such thing; it says nothing about whether a party is required when claims *are* asserted against it by the plaintiff. Still less does it say that a party is necessarily a required party because claims were brought against it. The tort claims asserted against James are the same tort claims that are asserted against the other Defendants. *Reyna* does not indicate, and Evans has not shown, that the mere fact that Plaintiff also sued James means that James is a required party under Rule 19.

With regard to the second Rule 19(a) factor, Evans has not carried her burden to show that James claims an interest relating to the subject of the action and is so situated that disposing of the action in James' absence may: (i) as a practical matter impair or impede James' ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations *because of the interest*. There is no evidence that James claims an interest in any recovery Plaintiff may make in this lawsuit. There is also no evidence that Evans will be subject to a substantial risk of multiple or inconsistent obligations because of any interest James might have in this lawsuit. Evans admits that she is no longer pursuing her

Cross-Claim, so there is no basis to afford affirmative relief to Evans. Her arguments about pursuing her claims against James in this litigation are moot.

For these reasons, the Court finds that James is not a "required" party under Rule 19(a). Therefore, no inquiry under Rule 19(b) is necessary because the threshold requirements of Rule 19(a) have not been satisfied. The Court finds that this litigation may proceed without James. Accordingly, Evans' Renewed Motion to Dismiss will be denied.

## CONCLUSION

For the reasons stated herein, Defendant #AE20's Motion to Dismiss for lack of personal jurisdiction (Doc. No. 103) will be granted. Defendant #AE20' Motion to Dismiss for failure to state a claim (Doc. No. 105) is moot. Defendant Evans' Renewed Motion to Dismiss (Doc. No. 109) will be denied.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE