IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FERNANDO CAMPS,                    )
                                   )
        Plaintiff,                 )
                                   )        NO. 3:17-cv-01039
v.                                 )        JUDGE RICHARDSON
                                   )
GORE CAPITAL, LLC, KARL JAMES,     )
and ANGELA EVANS,                  )
                                   )
        Defendants.                )

## MEMORANDUM OPINION

Pending before the Court is Defendant Angela Evans' Motion for Summary Judgment (Doc. No. 200, "Motion"), which is supported by a Memorandum of Law (Doc. No. 201). Plaintiff Fernando Camps has filed a response (Doc. No. 207), and Defendant has filed a reply (Doc. No. 215). Each party has filed responses (Doc. Nos. 208 and 216) to the other party's statement of undisputed facts.

## BACKGROUND

In his Third Amended Complaint (Doc. No. 191), Plaintiff alleges that he was targeted by Defendants in a series of fraudulent investment schemes. As to Defendant Evans, Plaintiff asserts causes of action for fraud (Count II), fraud by wire transfer (Count III), intentional misrepresentation (Count IV), negligent misrepresentation (Count V), conversion (Count VI), breach of fiduciary duty (pled alternatively in Count VII), breach of oral contract (Count VIII), and unjust enrichment (pled alternatively in Count IX).[1]

---

[1] In Count I, Plaintiff alleges breach of contract against Defendant Gore Capital LLC only.

Most of the facts asserted in the parties' respective statements of (purportedly) undisputed facts are disputed. The Court discusses various disputes of fact below. However, in the text (as opposed to the footnotes) of this and the following two paragraphs, the Court will identify facts that appear to be undisputed and provide useful context for Plaintiff's claims. Evans and Plaintiff met in a restaurant bar in Argentina in November 2013 and thereafter began a long-distance, romantic relationship, which included visiting cities and family together about once a month. Evans had previously spoken about investments with an acquaintance, Defendant Karl James, because she "knew people he knew and deals he had done," she had a lot of respect for him, and he was a smart businessperson. She described James as "someone she trusted with her life." Evans invested some money[2] in James' company, Gore Capital.[3]

In March 2014 Evans introduced Plaintiff to James in St. Petersburg, Florida, at a professional racecar event, where James and Evans discussed with Plaintiff certain business investments, including a potential investment in racecar activities through a company called #AE20, LLC.[4] Evans and Plaintiff discussed working together on an investment project. Eventually, Plaintiff wired $250,000 to Evans's bank account to be sent to Gore Capital. Plaintiff claims that Evans fraudulently transferred that money to Gore Capital for her own benefit, not Plaintiff's.

---

[2] The amount of this investment is in dispute.

[3] It is disputed whether Evans invested in her individual capacity or through her company, Denali Strategic Enterprises. The parties also dispute the extent to which Evans became a non-managing member of Gore Capital after investing therein.

[4] Plaintiff's claims against #AE20, LLC were dismissed by the Court on July 2, 2019 (Doc. No. 144).

In the fall of 2014, Plaintiff sent additional funds to Gore Capital and/or its projects in the amounts of $200,000, $50,000, and $50,000. After receiving no further information or documentation about these funds, Plaintiff expressed his increasing concerns to Evans and both Plaintiff and Evans sought answers from James and Gore Capital about the status of the funds they had sent to Gore Capitol. Plaintiff then told Evans that the situation regarding his investments was intolerable and he intended to take legal action. This lawsuit followed.[5]

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.

---

[5] Evans has filed a cross-complaint against Defendants James and Gore Capital (Doc. No. 192).

*Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

A. Fraud by Wire Transfer

Evans first contends that there is no private right of action for fraud by wire transfer in violation of 18 U.S.C. § 1343, which is a criminal statute. The Court agrees. A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the

executive branch. *Saro v. Brown,* 11 F. App'x 387, 387 (6th Cir. 2001). More to the point, violations of the wire fraud (or, for that matter, mail fraud) criminal statutes do not give rise to independent, private (civil) causes of action. *Id., cited in Gratton v. Cochran,* No. 3:19-cv-00267, 2019 WL 1787665, at *3 (M.D. Tenn. Apr. 24, 2019).

In response to the Motion, Plaintiff has not rebutted this argument. The Court will dismiss Plaintiff's fraud by wire transfer claim (Count III) because there is no private right of civil action based on a defendant's alleged wire fraud in violation of 18 U.S.C. § 1343.

B. Fraud/Intentional Misrepresentation

"The Tennessee courts consider 'fraud,' 'intentional misrepresentation,' and 'fraudulent misrepresentation' to be different names for the same cause of action."[6] *Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 275 (M.D. Tenn. 2020).[7] A plaintiff alleging intentional misrepresentation must address the following elements with particularity: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *PSC Indus., Inc. v. Johnson*, No. 3:19-cv-00362, 2021 WL

---

[6] In *Hodge v. Craig,* 382 S.W.3d 325, 342–43 (Tenn. 2012), the Tennessee Supreme Court explained that the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" all refer to the same tort, and expressed its preference for the term "intentional misrepresentation." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014); *Nazle Amirazodi, v. Capella Educ. Co.*, No. 3:21-cv-00074, 2021 WL 1946643, at *4 (M.D. Tenn. May 14, 2021).

[7] Because Count II (fraud) and Count IV (intentional misrepresentation) are "different names for the same cause of action," *Best Choices Roofing*, 446 F. Supp. 3d at 275, the Court will *sua sponte* dismiss Count II as duplicative of Count IV.

1663574, at *15 (M.D. Tenn. Apr. 28, 2021); *Constr. Mgmt., Inc. v. Expo Hosp., LLC*, No. 3:19-cv-00298, 2020 WL 489461, at *4 (M.D. Tenn. Jan. 30, 2020).

"The law has never undertaken to precisely define fraud," recognizing that such an effort would be futile because fraud "assumes many shapes, disguises and subterfuges." *Vazeen v. Sir*, No. M2019-01395-COA-R3-CV, 2021 WL 832043, at *5 (Tenn. Ct. App. Mar. 4, 2021) (citing *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012)). "The essence of fraud is deception. In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted." *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005), *cited in Harris v. Wells Fargo Bank, N.A.*, No. 18-2400-JPM-dkv, 2019 WL 3080764, at *13 (W.D. Tenn. Mar. 18, 2019). "Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage." *Id.* In Tennessee, fraud includes those situations where a party, while not actually lying, intentionally produces a false impression in order to mislead another or to obtain an undue advantage over him. *Gregg v. Y.A. Co. Co.*, No. 1:06-cv-203, 2007 WL 4570889, at *22 (E.D. Tenn. Dec. 28, 2007) (citing *Tully v. USA Wireless, Inc.,* No. 01A01-9707-CH-00332, 1998 WL 195955, at *5 (Tenn. Ct. App. Apr. 24, 1998)). "Under Tennessee laws, the intention to defraud is generally a question of fact that usually requires a trial before it can be fully developed." *Id.* (citing *Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 499 (Tenn.1978)).

Evans argues that she is entitled to summary judgment on Plaintiff's fraud/intentional misrepresentation claims, because the undisputed evidence demonstrates that (1) Evans did not make an untrue statement of existing or past fact and to the extent that she did she believed it to

be true; (2) Plaintiff did not reasonably rely on any (to the extent there were any) representation made by Evans; and (3) there is no evidence that Evans acted fraudulently or recklessly.

### i.    *False Representation of Past or Existing Fact*

Evans argues that Plaintiff cannot show that she made a false statement of existing or past fact, as required by the first and second element of this cause of action. Evans contends that when asked in his deposition to identify the specific statements Evans made to him that were untrue, Plaintiff responded, "It's basically the investments that I've made. No real statements. Just the investments that I've made, none of them have become fruitful." (Doc. No. 203-5 at 34). Thus, Evans contends that Plaintiff's "sworn testimony that there are 'no real statements' should doom" this claim.[8] (Doc. No. 201 at 13).

In response, Plaintiff maintains that the Court cannot rely solely on the one isolated statement pointed out by Evans from his deposition because (1) he previously identified specific misrepresentations made by Evans (*see infra* n.8) and (2) even if a specific false statement had not been made, fraud does not necessarily require the defendant to lie—*i.e.*, make a false *representation* as such—and can include intentionally producing a false impression in order to mislead.[9] And, according to Plaintiff, there is clear evidence of Evans' misrepresentations and

---

[8] Plaintiff's Affidavit, which was filed on May 3, 2018, more than two years before his deposition, includes descriptions of specific assurances and representations Evans made to Plaintiff about the investments. (Doc. No. 55-1).

[9] Plaintiff is correct on this point. In Tennessee, fraud occurs when a person intentionally misrepresents a material fact *or* intentionally produces a false impression in order to mislead another or to obtain an unfair advantage. *Orlowski v. Bates*, 146 F. Supp. 3d 908, 924 (W.D. Tenn. 2015); *Brown v. Birman Managed Care, Inc*., 42 S.W. 3d 62, 66 (Tenn. 2001); *see also Cannon v. S.E. Fin. Credit Union*, No. 3:15-cv-29, 2015 WL 3607299, at *6 (M.D. Tenn. June 8, 2015) ("[A]lthough this case did not involve debtors making affirmative misrepresentations or omissions that demonstrated fraud, their pattern of behavior could potentially have demonstrated fraud"); *Tully v. USA Wireless, Inc*., No. 01A01-9707-CH-00332, 1998 WL 195955, at *5 (Tenn. Ct. App. Apr. 24, 1998) ("[O]ur jurisprudence of fraud  includes those situations where a party, while not

intentional production (creation) of a false impression. Plaintiff points to numerous facts in the

record that he contends support that Evans made statements of past or existing fact, or intentionally

produced a false impression, in an attempt to mislead Plaintiff:

> In particular, after the Florida Racing Event, any talks about the business and investments were made through Evans. (Camps Dep. 97:5-11). Evans was the only person communicating updates and keeping Camps abreast if how the AE20 venture was going. (*Id.* 61:10-62:21). . . . Evans promoted short term, safe and profitable business investments in Gore, of which she was a member, and assured Camps that his funds would be used for only his investments with Gore and/or #AE20. (Camps Aff. ¶6). . . . In August 2014, Evans told Camps that she and James were now offering an investment through Gore in Riverside, a real estate project in Miami, Florida that would provide a fast return. (*Id.* ¶11) "I had conversations with Miss Angela Evans regarding this investment. The – her business partners, Karl and Frank, the only dealings I had with them is through these emails, instructions on how to wire money, the conversations were done with Miss Evans. (Camps Dep. 53:13-54: and see 65:23-66-5) Evans explicitly told Camps that she had seen the Miami property and everything was in order. (Ex. 8, Camps Dep. 91:5-24). . . . Contrary to Evans's testimony that she had "zero" involvement in Camps's negotiating or executing this promissory note (Evans's Dep. 214:1-14), Evans's emails with Gore, not copied or addressed to Camps, show Evans directly, and sometimes solely, involved in negotiating and facilitating the signing of Camps's $200,000 promissory note on September 17, 2014 (Ex.11) In October 2014, Evans told Camps that Gore needed more money and asked Camps to invest another $50,000, which Camps wire-transferred to Gore on October 8, 2014, and again on October 24, 2014. (Camps Aff. ¶16).

(Doc. No. 207 at 19-20).

And while this evidence (viewed in the light most favorable to Plaintiff) establishes that

Evans created the impression that Plaintiff would be credited with having invested in Gore Capital,

it was later revealed to Plaintiff that despite his transfer of funds to Evans and Gore Capital, he

had been credited with no investment interest in Gore Capital, while Evans' two percent interest

---

actually lying, intentionally "produces a false impression in order to mislead another or to obtain an undue advantage over him . . . ." (quoting *Haynes v. Cumberland Builders*, 546 S.W.2d 228, 232 (Tenn. App. 1976)). Thus, a specific misrepresentation need not necessarily be made to satisfy the first and second elements of the claim where the statements that are made or the actions that are taken create a false impression in an attempt to mislead.

in Gore Capital increased to 12 percent—on the same date Evans transferred Plaintiff's $250,000 to Gore Capital. (*See* Doc. No. 207 at 20 (citing Doc. Nos. 212-7, 212-8, 212-9, 212-10, 212-11, 212-12)). Thus, Plaintiff argues that the above actions and statements show that Evans "misrepresented investment opportunities to induce [Plaintiff] to invest in the same, created a false impression that Camps would have an interest in Gore." (*Id*. at 21).

The Court finds that Evans initially carried her burden to show presumptively, based on her arguments and submission of evidence, that there were no genuine issues of fact as to whether she made a representation of a past or existing fact. In response to inheriting the summary-judgment burden from Evans on this point, however, Plaintiff has carried his burden to demonstrate a genuine issue of material fact as to whether Evan misrepresented a past or existing fact or intentionally produced a false impression in order to mislead him. *See Harris*, 2019 WL 3080764, at *13. Thus, the Court finds that Plaintiff has demonstrated genuine issues of material fact with regard to whether Evans made a statement of past or existing fact.

ii.      *Reliance*

Evans also argues that Plaintiff cannot establish the element of reliance in this case. As noted above, one element (the fifth element stated above) of the Tennessee tort of fraudulent misrepresentation is the plaintiff's reasonable reliance on the defendant's misrepresentation. *Boynton v. Headwaters, Inc*., 564 F. App'x 803, 818 (6th Cir. 2014) "The burden is not upon the defendant . . . [but] upon the plaintiff to show" such reasonable reliance. *Id*. (citing *McNeil v. Nofal*, 185 S.W.3d 402, 408–09 (Tenn. Ct. App.2005)). Whether it be negligent or intentional, a plaintiff must prove that he reasonably relied upon the misrepresentation to his detriment. *Riddle v. Lowe's Home Centers, Inc*., 802 F. Supp. 2d 900, 907–08 (M.D. Tenn. 2011).

Although Tennessee courts generally do not articulate it this way, this concept portends two distinct requirements: *actual* reliance and *reasonableness of* such reliance. Here, there is no dispute that Plaintiff indeed relied on Evans' representations; thus, the issue is whether such reliance was reasonable. In assessing whether any actual reliance was reasonable, several factors must be considered, including (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of fraud; (6) the opportunity to discover fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation. *Id*. at 908. A party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach. *Id*. at 908. "The reasonableness of a party's reliance on a misrepresentation is a question of fact." *Hangar, Inc. v. Se. Asset Mgmt., LLC*, No. 07-2538, 2009 WL 10702523, at *3 (W.D. Tenn. Mar. 20, 2009).

Evans argues that Plaintiff knew she was not a financial advisor, and she has stated that Plaintiff was a sophisticated businessperson and investor who made his own investments and she did not control them in any way. (Doc. No. 216 at ¶ 64). Plaintiff, on the other hand, testified that Evans was "a businesswoman" and very business oriented (Doc. No. 203-5 at 26) and that he made his investment based on the trust and confidence that he placed in Evans. (Doc. No. 212-1 at 25 (Dep. at 91)).

Evans met her initial burden at summary judgment to show the apparent absence of a genuine issue as to whether Plaintiff's reliance was reasonable. In response, however, Plaintiff met his burden to demonstrate that a genuine issue in fact exists as to the reasonableness of his reliance do exist as to this point: Undisputedly, although Plaintiff was a sophisticated businessperson, so

was Evans. And here, undisputedly, Evans suggested initiating the investments in Gore Capital—a company about which she had much greater access to information, given her connection to James, than did Plaintiff. Additionally, although (as discussed below) there was not a fiduciary relationship between the parties, Plaintiff and Evans did have a personal (romantic) relationship. Viewing the evidence (and the inferences that reasonably could be drawn therefrom) most favorably toward Plaintiff, as the Court must do at summary judgment, the Court finds that a reasonable jury could find that Plaintiff's reliance was reasonable. Accordingly, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff's reliance on Evan's representations was reasonable.

### iii. *Knowing or Recklessly Falsity of the Representation*

Evans also argues that Plaintiff "simply has no evidence that any statement Evans ever made to Camps was made fraudulently [or] recklessly." (Doc. No. 201 at 14-15). Evans asserts that all representations that she made she believed to be indisputably true, and "[t]here is no evidence that Evans knew—or had any reason to suspect—that any aspect of Gore Capital or James' activities were fraudulent until well after all the relevant investments were made." (*Id*. at 14).[10] To meet her burden as the moving party at summary judgment, Evans cites her own deposition testimony where she testified that she never received any return on her $300,000

---

[10] Evans also argues that there is no evidence that she and James were in "cahoots" together or they "worked together to lure new investors." (Doc. No. 201 at 14). Whether Evans and James were working together is simply not dispositive, or even very probative, as to the issue of whether Plaintiff's intentional misrepresentation and fraud claims asserted against Evans survive summary judgment. Evans conceivably could have made fraudulent statements regarding the investments without James even being aware; she could have done so to advance her own interests, with James being unwitting, or at least indifferent, to her doing so. Evans's argument would have had more applicability if, for example, Plaintiff had invoked a civil conspiracy theory in any effort to hold Evans accountable for the torts of James on the grounds that she and Evans were co-conspirators, but that is simply not the case here.

investment in Gore Capital; thus, Evans contends that she too "was duped by James" and therefore could have not known that her statements were false because she too lost money. (*Id.* (citing Doc. No. 203-1 at 35)). The Court is unconvinced that Evans's own bad experience with James logically suggests that Evans would not have known that the impression created by Evans—that Plaintiff would be credited with an investment in Gore Capital that (a jury could find) was actually credited to Evans—was false. The Court will make the dubious assumption *arguendo* that Evans has carried her burden (based upon her own testimony) to make an initial showing of the absence of a genuine issue as to whether any false statements were made knowingly.

In response, Plaintiff asserts that Evans purposefully made the various statements cited by Plaintiff above to intentionally create an impression that Plaintiff "would have an interest in Gore despite knowing that [in fact he would not and that instead] only she would have an interest in Gore." (*Id.* (emphasis added)). In support of this argument, Plaintiff points to evidence demonstrating that Evans' membership interest in Gore increased from 2 percent to 12 percent immediately after Plaintiff's initial investment of $250,000. (Doc. No. 208 at ¶¶ 6 and 7; *see also* Doc. No. 216 at ¶ 23; Doc. Nos. 211-6, 212-15).

The Court finds that a reasonable jury could conclude (when viewing the evidence in a light most favorable to Plaintiff) that it was Evans who benefitted from Plaintiff's initial investment. A reasonable jury could also conclude from this evidence that because Evans benefitted from Plaintiff's initial investment, on the same day the transfer of funds was made, that she was aware that Plaintiff's $250,000 would be used for her benefit (*e.g.*, an increased membership interest in Gore Capital), rather than his. Thus, Plaintiff has created a genuine issue of material fact as to what Evans knew and whether she intended to defraud him by using his investments to increase her own interest in Gore Capital. In short, based on this evidence and

viewing it most favorably to Plaintiff, a reasonable jury could find that Evans recklessly or knowingly made false representations to Plaintiff.

Therefore, summary judgment as to Plaintiff's claims of intentional misrepresentation (Count IV) will be denied.

C. Negligent Misrepresentation

To prove his alternative[11] negligent misrepresentation claim, Plaintiff must show that: (1) Evans was acting in the course of her business, profession, or employment, or in a transaction in which she has a pecuniary (as opposed to gratuitous) interest; (2) Evans supplied faulty information meant to guide others in their business transactions; (3) Evans failed to exercise reasonable care in obtaining or communicating the information; and (4) Plaintiff justifiably relied upon the information. *W. Silver Recycling, Inc. v. ProTrade Steel Co., LTD.*, 476 F. Supp. 3d 667, 682 (M.D. Tenn. 2020). Under Tennessee law, to support a claim of negligent misrepresentation, the faulty information must "consist of a statement of a material past or present fact." *Id.* (quoting *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982)). Consequently, statements of opinion or intention are not actionable, and representations concerning future events are not actionable even though they may later prove to be false. *Id.*

Evans combines her arguments regarding the intentional and negligent misrepresentation claims, relying on the arguments that she did not make any false statement, and that if she did, that

---

[11] Negligent misrepresentation is, by definition, an alternative to intentional misrepresentation (a/k/a fraud). *Ryan v. Napier*, 245 Ariz. 54, 60, 425 P.3d 230, 236 (2018) ("It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree are separate and mutually exclusive." (quoting *Am. Nat'l Fire Ins. v. Schuss*, 221 Conn. 768, 607 A.2d 418, 422 (1992)). An act may be intentional, or it may be negligent, but it cannot be both. *See id.* Accordingly, it is not uncommon for these two torts to be pled in the alternative. *See Hamm v. Wyndham Resort Dev. Corp.* No. 3:19-CV-00426, 2020 WL 1853577, at *13 (M.D. Tenn. Apr. 13, 2020) ("The plaintiffs allege negligent misrepresentation in the alternative to their claim of intentional misrepresentation.").

she did not do so knowingly. (Doc. No. 201 at 12-16). As discussed immediately above in relation to Plaintiff's intentional misrepresentation claim, the Court has found that there is a genuine issue of material fact regarding whether Evans made a false statement. Moreover, Evans does nothing to meet her burden at summary judgment to demonstrate that she did not act negligently with respect to the falsity of the above-referenced representations that a jury could find to be false. Accordingly, summary judgment will be denied as to Plaintiff's negligent misrepresentation claim (Count V).

D. <u>Contract, Quasi-Contract, and Unjust Enrichment</u>

Evans argues that Plaintiff's oral contract and quasi-contract claims fail because even assuming there was some enforceable agreement between her and Plaintiff, she did exactly what he told her to do with his $250,000, and there is no evidence that she retained any of Plaintiff's money or retained a benefit from Plaintiff's investments. In other words, Evans argues that, even if there was an oral contract, there was no breach. As noted above, she has presented evidence that the money from Plaintiff was transferred into her bank account and then out of her bank account to the Gore Capital account. (Doc. No. 203-7).

Plaintiff responds by asserting that the evidence shows that Evans agreed to transfer Plaintiff's money to Gore Capital to acquire a Gore membership for Plaintiff, (not for Evans). He asserts that he sent Evans his money in reliance upon that agreement, and (contrary to that agreement) Evans unlawfully used Plaintiff's money to increase her own interest in Gore Capital from 2 percent to 12 percent, receiving significant benefit and value from Plaintiff's investment money and being unjustly enriched thereby.

A viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages

caused by the breach of contract. *F.S. Sperry Co, Inc. v. Schopmann*, 304 F. Supp. 3d 694, 701 (E.D. Tenn. 2018); *Daniels v. Erie Ins. Group*, 291 F. Supp. 3d 835, 841 (M.D. Tenn. 2017). Under Tennessee law, a party may enforce an oral contract if the party demonstrates: (1) the parties mutually assented to the terms of the contract, and (2) these terms are sufficiently definite to be enforceable. *Henrick v. Mealor*, No. 3:18-cv-00621, 2020 WL 1676913, at *6 (M.D. Tenn. Apr. 6, 2020) (citing *Burton v. Warren Farmers Co-op.,* 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002)).

Evans has carried her initial burden, for purposes of the Motion, to presumptively show no genuine issue of material fact as to whether she breached the agreement, if there was one, to transfer Plaintiff's $250,000 to Gore Capital. She has done so by showing that she did transfer the money to Gore Capital as Plaintiff requested (and as Evans allegedly promised), thus making an initial showing that she complied with her alleged binding promise and that Plaintiff cannot show otherwise. But, in response, Plaintiff has carried his resulting burden to show that there is a genuine issue of material fact as to this issue. As shown above, Plaintiff has presented evidence that indicates Plaintiff's investments in Gore Capital may have been used to increase Evans' interest therein, not to create an interest therein for Plaintiff. Thus, Evans' Motion with regard to breach of the oral contract (Count VIII) will be denied.

As for Plaintiff's alternative claim[12] of unjust enrichment, Evans again challenges the facts alleged in support of that claim, arguing that she never retained any money of Plaintiff's and simply was not enriched by any of Plaintiff's investments in Gore Capital. Plaintiff argues that, to the contrary, the evidence shows that Evans received significant benefit and value from Plaintiff's

---

[12] Claims for unjust enrichment rest, in part, on the allegation that the parties did *not* have an enforceable contract. *W. Silver Recycling*, 476 F. Supp. 3d at 681. Therefore, Plaintiff's claim for unjust enrichment is alternative to his claim for breach of contract.

investment money and was unjustly enriched by unlawfully using Plaintiff's money to increase her interest in Gore Capital.

Despite issues of disputed fact as to whether Evans was "enriched," Plaintiff's unjust enrichment claim still fails. "The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citation omitted)). Unjust enrichment, however, involves *the willing conferring of a benefit by one party* to the other and is contraindicated when the benefit alleged is involuntarily conferred. *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 847 (M.D. Tenn. 2019); *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 217 (Tenn. Ct. App. 2004). In *Wachter*, in deciding a motion to dismiss, this Court confronted a plaintiff's allegation that as a result of their "misconduct," the defendants "have been unjustly enriched through the continued possession of [Plaintiff's] confidential information"; the Court held that the plaintiff did not state an unjust enrichment claim because the plaintiff did not allege that it willingly conferred such a benefit, and in fact, "the entire gist of the [c]omplaint [was] that [the p]laintiff in no way did so." *Wachter, Inc.*, 387 F. Supp. 3d at 847-48. Likewise, Plaintiff here asserts that via her misconduct, Evans conveyed a benefit upon herself *without Plaintiff's knowledge*—not that Plaintiff *willingly* conferred such a benefit upon Evans. Indeed, the entire gist of Plaintiff's argument and evidence is that Plaintiff in no way willingly conferred such a benefit. Thus, Plaintiff has failed to present evidence that could adequately support his unjust enrichment claim (Count IX) and it will be dismissed.

E. Conversion

The elements of conversion are (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the property alleged to have been converted; and (3) defiance of the true owner's rights to the property. *Young v. H & H Testing, LLC*, No. M2020-00145-COA-R3-CV, 2021 WL 1942371, at *5 (Tenn. Ct. App. May 14, 2021). Evans maintains that there is no evidence she appropriated Plaintiff's money, had access to Plaintiff's money, or used his money for her own benefit. She insists that there is no evidence that she knew James was engaged in deceptive conduct or that she profited from her own investment or Plaintiff's investment in Gore Capital. She claims she and Plaintiff *both* invested in a fraudulent enterprise and *both* lost money.

On the other hand, Plaintiff has presented evidence, as indicated above, that Evans used Plaintiff's money to increase her interest in the company, not to create Plaintiff's interest therein. If Evans in fact did use Plaintiff's money for her own interest, to create or increase her own investment in Gore Capital, then a reasonable jury could find that she converted Plaintiff's money. A reasonable jury could also find otherwise, but the Court cannot make that determination on summary judgment. Evans' Motion on the conversion claim (Count VI) will be denied.

F. Breach of Fiduciary Duty

Plaintiff has pled, as an alternative claim, that Evans breached a fiduciary duty to him.

In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages. *Wischermann Partners, Inc. v. Nashville Hosp. Cap. LLC*, No. 3:17-cv-00849, 2021 WL 809683, at *7 (M.D. Tenn. Mar. 3, 2021). A fiduciary relationship arises whenever confidence is reposed by one party in another who exercises dominion and influence. *Nutt v. Smart*, No. 1:20-CV-00002-CHS, 2021 WL

1015832, at *4 (E.D. Tenn. Feb. 23, 2021); *see also Grant v. Tucker*, 57 F. Supp. 3d 852, 859 (M.D. Tenn. 2014). A fiduciary duty is the duty to act primarily for another's benefit. *Id.* Generally, parties dealing at arm's length lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship. *Id.*

Tennessee law recognizes two primary categories of fiduciary relationships: (1) fiduciary *per se*, "such as between a guardian and a ward, an attorney and client, or a conservator and incompetent," and (2) a confidential relationship. *Faber v. Ciox Health, LLC,* 331 F. Supp. 3d 767, 780 (W.D. Tenn. 2018). Identifying a confidential relationship involves an examination of the particular facts and circumstances of the case to determine whether one party exercised dominion and control over another, weaker party. *Id.* (citing *Grant,* 57 F. Supp. 3d at 859). The Court must evaluate whether (1) the defendant was in a position to influence or control the plaintiff; (2) the defendant used the confidences given to him or her to obtain some benefit from, or advantage over, the plaintiff; and (3) the plaintiff, as the dominated party in the relationship, suffered some detriment at the hands of the defendant. *Id.* The party asserting that a confidential relationship exists bears the burden of proving such relationship. *Grant,* 57 F. Supp. 3d at 859 (citing *Childress v. Currie,* 74 S.W.3d 324, 328 (Tenn. 2002)).

Plaintiff here alleges the second category of fiduciary relationship. Plaintiff contends not that Evans was his guardian or conservator or attorney or in any way "appointed" to act for him, but rather that he and Evans had a confidential relationship. To determine whether a confidential relationship existed, the Court looks to whether Evans was in a position to influence or control Plaintiff, whether Evans used the confidences given to her by Plaintiff to obtain some benefit, and whether Plaintiff was the dominated party in the relationship and suffered some harm caused by Evans.

The "confidential relationship" is not merely a relationship of mutual trust and confidence. Rather, it is one where one places confidence in the other, and the recipient of that confidence (the "other") is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party. *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *12 (Tenn. Ct. App. Jan. 15, 2009), *cited in Triumph Hospitality, LLC v. Construction Mgmt., Inc.,* No. 3:19-cv-00353, 2019 WL 3841942, at *8 (M.D. Tenn. Aug. 15, 2019). The person upon whom the trust and confidence is imposed is under a duty to act for and to give advice for the benefit of the other person on matters within the scope of the relationship. *Id.* Relationships that are not fiduciary *per se* require proof of the elements of dominion and control in order to establish the existence of a confidential relationship. *Id.* Moreover, a confidential relationship cannot be unilateral, rather both parties must understand that a special trust or confidence has been reposed. *Id.*

Evans argues there was no fiduciary relationship between her and Plaintiff, so she owed him no fiduciary duty. She claims that Plaintiff is a sophisticated investor who has run his own company for over twenty years, has ample experience in business and investing, and made his own decisions to invest. Indeed, the record evidence (cited by Evans in her Memorandum of Law) demonstrates that Plaintiff owns his own architectural firm, has an income of slightly less than $500,000 per year,[13] and is also involved in various other companies that have varying levels of success and profitability. (Doc. No. 203-5 at 4-8). Evans also argues that there is no evidence[14] in

---

[13] Although Plaintiff works in Argentina, during his deposition he estimated his yearly salary in U.S. dollars. (Doc. No. 203-5 at 4-8).

[14] Lest there be any misunderstanding, the Court pauses to note that on motion for summary judgment, a defendant-movant cannot shift the burden to the plaintiff merely by asserting that there is "no evidence" to support an essential part of the plaintiff's claim. Instead it must *point to evidence* initially indicating the absence of evidence to support such part of the plaintiff's claim.

the record to demonstrate that she exercised influence[15] or control over Plaintiff—rather, he paid for the trips that they went on together, and when they were not visiting each other, they lived a completely independent life from each other. (Doc. No. 201 at 21). The Court finds that Evans has carried her burden to make an initial showing of the absence of a genuine issue of fact as to the existence of a fiduciary duty as required for the breach-of-fiduciary duty-claim. The burden to show a genuine issue on this (very material) issue thus shifts to Plaintiff.

Plaintiff contends that he and Evans had a "confidential, personal and business relationship" and that he made his investments in Gore Capital "based on the trust and confidence Evans gave him." (Doc. No. 207 at 22-23). Plaintiff argues that Evans "exercised dominion and undue influence" regarding his investments in Gore, acting as Plaintiff's fiduciary. (*Id*. at 23). But Plaintiff has not shown evidence sufficient to support a jury finding that Evans, even if she was in a position to influence him, actually dominated him or controlled his actions. Even if he was reasonable in relying upon her statements (which a jury will have to determine), there is no question that Plaintiff was a successful professional and experienced businessman, not a weak party, and there is no evidence that Evans somehow forced him to invest. Plaintiff's argument here would create a very slippery slope, whereby relationships that are of a very common type (*i.e.*,

---

Here, Evans has done that, pointing to particular evidence suggesting—preliminarily, and subject to Plaintiff's prerogative to make a contrary showing, if he can, to meet the burden shifted onto him by Evans—that Plaintiff could not establish a fiduciary relationship.

[15] Mere influence, without the requisite "dominion and control," is not enough to demonstrate the existence of a confidential relationship in any event. *See Innerimages, Inc. v. Newman*, No. E2018-00375-COA-R3-CV, 2019 WL 1380096, at *15 (Tenn. Ct. App. Mar. 26, 2019). So while there may (contrary to Evans's suggestion) be evidence in the record indicating that Evans had influence over Plaintiff with respect to whether he should invest in Gore Capital—for example, she was the only one that initially communicated with Plaintiff regarding sending funds to Gore Capital (Doc. No. 212-1 at 15-16)—as noted, mere influence without more is not enough to impose a fiduciary duty under Tennessee law.

romantic and business in nature) somehow are treated as fiduciary in nature merely because they are of this very common type. The Court is particularly hesitant to recognize the existence of "control" by one partner or the other in a romantic relationship as the kind of "control" indicative of a fiduciary relationship for legal purposes. And to the extent that Plaintiff here relies on the alleged "confidential" nature of his relationship with Evans, he has failed to establish what exactly it is that makes it a "confidential" relationship—rather than, on the one hand, an arms' length business relationship, or on the other hand a typical romantic relationship that generally is not recognized as "confidential" under the law even if it is intimate. In short, Evans has met her burden to show the absence of a genuine issue of fact as to the existence of an element of Plaintiff's fiduciary-duty claim (Count VII). Accordingly, summary judgment will be granted to Defendant on that claim.

## CONCLUSION

For all these reasons, the Court will grant the Motion in part and deny the Motion in part. The Motion will be granted as to Plaintiff's claims asserted against Angela Evans for fraud by wire transfer (Count III), breach of fiduciary duty (Count VII), and unjust enrichment (Count IX). Additionally, the Court will dismiss Plaintiff's fraud claim (Count II) as duplicative of Plaintiff's intentional misrepresentation claim (Count IV). The Motion will be denied as to Plaintiff's claims for intentional misrepresentation (Count IV), negligent misrepresentation (Count V), conversion (Count VI), and breach of oral contract (Count VIII). Those claims will proceed to trial.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE